IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

BK 11-71644-CMS

ANGELA M. WOODY,
   Debtor.

AP 11-70041-CMS

WOODY B. WOODY,
   Plaintiff.
vs.

ANGELA M. WOODY,
   Defendant.

## MEMORANDUM OPINION

This adversary proceeding came before the court on May 20, 2013, for trial on the Complaint to Determine Dischargeability of Debts filed by Woody B. Woody ("Mr. Woody"). Marshall Entelisano appeared on behalf of the Plaintiff; D. Russell Eason appeared on behalf of Angela M. Woody ("Mrs. Woody"). After reviewing the evidence admitted at trial in the context of applicable law, this court **OVERRULES** Plaintiff's objection to dischargeability pursuant to 11 U.S.C. § 523(a)(2), **OVERRULES** Plaintiff's objection to dischargeability pursuant to 11 U.S.C. § 523(a)(4), **OVERRULES** Plaintiff's objection to dischargeability pursuant to 11 U.S.C. § 523(a)(5), and **OVERRULES** Plaintiff's objection to dischargeability pursuant to 11 U.S.C. § 1328(a)(4).

## JURISDICTION

The district court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) & (b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984 pursuant to 28 U.S.C. § 157(a). The bankruptcy court may enter an appropriate order and judgment pursuant to 28 U.S.C. § 157(b)(2)(I).

# FINDING OF FACTS

This adversary proceeding concerns the dischargeability of a debt for lost profits that arose out of the operation of Woody B's, a restaurant in Winston County, Alabama. After marrying in 2005, Mr. and Mrs. Woody decided to open a restaurant. Mr. Woody, who had been a contractor in the home-improvement business for 40 years, would finance the restaurant and perform needed maintenance and repairs; Mrs. Woody, who had been a waitress at various restaurants would operate and manage the restaurant. Mr. Woody testified that the profits generated by the restaurant would be his retirement income. There was no evidence concerning the interest that Mrs. Woody would have had in the income generated by the restaurant.

The couple opened their restaurant in November of 2007 and called it Woody B's, after Mr. Woody. To open the restaurant, Mr. Woody took out a $5,000.00 bank note. Mrs. Woody was not obligated on the note. This note has since been paid by the restaurant. There were other loans taken out for the operation of the restaurant which were partially paid for by the restaurant's income and Mr. Woody testified that there is currently approximately $7,000 or $8,000 that he still owes on these later notes which were for the benefit of the restaurant.

Although Mr. Woody testified that he considered himself and his now ex-wife partners in the restaurant, there was no formal agreement, partnership or otherwise, between the two.[1] In particular, there was no evidence of any agreement as to how income from the restaurant was to be divided.[2]

---

[1] It should be noted that this testimony is inconsistent with the assertion in Mr. Woody's Complaint that Mrs. Woody was an employee of Woody B's.

[2] Mr. Woody testified that the profits generated by Woody B's would constitute his retirement income, but there is no evidence that this was Mrs. Woody's understanding. In addition, such testimony is inconsistent with Mr. Woody's testimony that he and Mrs. Woody were partners in Woody B's: if they were partners, Mrs. Woody would be entitled to some of the

2

There was no evidence that Mrs. Woody considered herself and her now ex-husband to be partners in the restaurant.

There is no documentation that accurately depicts the cash receipts generated by Woody B's while it was managed by Mrs. Woody because Mrs. Woody only recorded the income reported to the taxing authorities. It is undisputed that not all cash receipts of the restaurant were reported. Mrs. Woody testified that she did not record all of the cash receipts because Mr. Woody directed her to do so. Mr. Woody denies that he directed her to do anything, but did admit that he did give his opinion on how to run the restaurant. The court found Mrs. Woody's testimony much more credible on this issue for a number of reasons. First, according to Mr. Woody's testimony, the income generated by Woody B's was to be his retirement income, he had run his own business for over 40 years, and he was the one who provided the financial backing to open the restaurant. In addition, the restaurant was called Woody B's (his name) and not Angela's (her name). Given all of this, it is almost certain that Mr. Woody was involved in the day-to-day financial decisions affecting the restaurant. Second, when Mr. Woody was not at his construction business, he was at Woody B's. The evidence indicates that most of the restaurant's business happened during the supper rush. Because the supper rush occurred outside of normal business hours, Mr. Woody would have been present and would have an idea of the income being generated by the restaurant.[3] Also, Mrs. Woody testified that she would sometimes turn off the cash register during the supper rush so there was no record of the total cash receipts.[4] Mr.

---

income generated by the restaurant as well.

[3]Woody B's was a fairly small restaurant with only 64 seats.

[4]There is no evidence concerning the disposition of the unrecorded cash receipts or recorded receipts of the restaurant. For all this court knows, the unrecorded cash could have been used to pay vendors of the restaurant. At least some of the cash receipts were used to pay

3

Woody would have been present during these times and surely would have realized that the cash register was not working properly. Mr. Woody also testified that he was with Mrs. Woody when she did the books for the restaurant on Sundays, so he would have known that the income being recorded was inconsistent with the income being generated by the restaurant.[5] Finally, Mr. Woody admitted that he took cash out of the register at Woody B's on occasion.[6] Having run his own business for a significant period of time, Mr. Woody would have known that any money he took out of the cash register would not be recorded in the business' books or reported to the taxing authorities.[7] Given Mr. Woody's level of involvement in the restaurant and the fact that he was the dominant personality in the marriage,[8] this court finds that he was, at the very least, aware that Mrs. Woody was not recording all of the cash receipts from Woody B's.

On June 8, 2010, approximately a year and a half after Woody B's opened, the parties were divorced. (Exhibit 1). The relationship between the parties was not friendly, as evidenced by

---

vendors of the restaurant because Mr. Woody testified he was never contacted by vendors concerning outstanding restaurant bills. The unrecorded cash could also have been used to repay business loans, as Mr. Woody testified that the restaurant repaid all loans with the exception of approximately $7,000 or $8,000. Finally, the unrecorded cash receipts could have been used to pay general living expenses of the marriage. If the unrecorded cash receipts were used in any of these ways, Mr. Woody would have received a benefit alongside Mrs. Woody.

[5] It should be noted that Mr. and Mrs. Woody filed joint tax returns: Mr. Woody provided the records for his contracting business and Mrs. Woody provided the records for Woody B's.

[6] When asked if he regularly took money from the cash register, Mr. Woody responded that he did not do so regularly, but admitted that he sometimes took cash from the register.

[7] This is not unlike Mr. Woody's admission that he had failed to file tax returns in the past.

[8] Mr. Woody is considerably older than Mrs. Woody. Also, Mr. Woody's marriage to Mrs. Woody was his fourth.

Case 11-70041-CMS    Doc 19    Filed 11/06/13    Entered 11/06/13 14:17:39    Desc Main
Document      Page 4 of 14

paragraph 1 of the Final Decree of Divorce, which provides that the bonds of marriage were dissolved "as a consequence and proximate result of [Mrs. Woody's] adulterous acts during the marriage of the parties." (Exhibit 1). Unfortunately for Mrs. Woody, the divorce decree does not get any better for her. Paragraph 3 found that "[Mrs. Woody] testified untruthfully at trial and as such the court has disregarded her testimony as it is not credible." Paragraph 6 further provides:

> The evidence introduced at trial, without objection by [Mrs. Woody's] attorney, evidences a profit derived from the restaurant in the amount of Seventy Three Thousand, Four Hundred Ninety and 40/100 ($73,490.40) Dollars. It was the Defendant's testimony that he saw little if any of the profit derived from the marital business. Therefore, the Defendant (Mr. Woody) is awarded the sum of Thirty Six Thousand, Seven Hundred Forty Five and 20/100 ($36,745.20) Dollars as his share of the profits made by the restaurant during the marriage of the parties...

(Exhibit 1). There was no evidence as to what part of the "profit derived from the restaurant" found by the divorce court resulted from unreported cash receipts as opposed to reported cash receipts. Mrs. Woody paid $2,500 to Mr. Woody pursuant to the divorce decree.

On August 8, 2011, Mrs. Woody filed a Chapter 7 bankruptcy petition. (Bk. Doc. 1).

On November 9, 2011, Mr. Woody filed a request for an extension on the deadline to file an objection to discharge. (Bk Doc 15).

On November 14, 2011 this adversary proceeding was commenced when the Complaint to Determine Dischargeability of Debts was filed. Such complaint alleges that the $36,745.20 awarded to Mr. Woody pursuant to the Final Decree of Divorce is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(5), and 11 U.S.C. § 523(a)(6).

On December 12, 2011, Mrs. Woody filed a motion to convert the Chapter 7 case to one under Chapter 13. (Bk. Doc. 20). An Order of Conversion was entered on December 15, 2011 (Bk.

Doc. 22).

On April 4, 2012, the Confirmation Order was entered. (Bk. Doc. 59). Said Confirmation Order provided that unsecured creditors would be paid 10.00% of their allowed debt. Mr. Woody will not receive a distribution pursuant to the Confirmation Order because he did not file a proof of claim. On September 20, 2012, the distribution to unsecured creditors was increased from 10% of their allowed debt to 66% of their allowed debt. (Bk. Doc. 68).

## CONCLUSIONS OF LAW

The Complaint to Determine Dischargeability of Debts asserts that the debt owed to Mr. Woody for profits from Woody B's is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(5), and 11 U.S.C. § 523(a)(6). In a trial on a complaint objecting to the dischargeability of a debt, the plaintiff bears the burden of proving that a debt is nondischargeable. To carry its burden, the plaintiff must prove such discharge is unwarranted by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). This court will address each code section separately.

I. Is the debt owed to Mr. Woody nondischargeable pursuant to 11 U.S.C. § 523(a)(2)?

Section 523 of the Bankruptcy Code is applicable to cases filed under Chapter 7 of the bankruptcy code. While this case was a Chapter 7 when the adversary proceeding was filed, the case was converted to a Chapter 13 shortly thereafter. Generally, section 523 does not apply in a Chapter 13 case. However, § 1328(a)(2) makes § 523(a)(2) applicable to a Chapter 13. Therefore, this court will address whether the debt owed to Mr. Woody is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

Section 523(a)(2) provides that:

6

> (a) A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt-
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>> (B) use of a statement in writing-
>>>> (i) that is materially false;
>>>> (ii) respecting the debtor's or an insider's financial condition;
>>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>>> (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2). "Paragraphs (A) and (B) of § 523(a)(2) are mutually exclusive-the fact that Congress excluded debts obtained through use of false financial statements from paragraph (A), and dealt with those debts in a separate subparagraph (B), makes clear that a plaintiff must prove different evidence for each subsection." Gieseking v. Thomas, 358 B.R. 754, 767 (Bankr. S.D. Ill. 2007). See also Fairfax State Savs. Bank v. McCleary (In re McCleary), 284 B.R. 876, 883 (Bankr. N.D. Iowa 2002). None of the proof offered by Mr. Woody at trial concerned statements in writing respecting Mrs. Woody's financial condition. The only document admitted into evidence was a copy of the Final Decree of Divorce. Therefore, Mr. Woody failed to offer evidence that would support a finding of a nondischargeable debt pursuant to § 523(a)(2)(B) and any objection to dischargeability pursuant to such subsection is due to be overruled. In re McCleary, 284 B.R. at 884.

Subsection 523(a)(2)(A) provides that debts will not be discharged to the extent that the debtor obtained them by false pretenses, a false representation or actual fraud. Mr. Woody asserts that Mrs. Woody obtained the unreported cash receipts generated by Woody B's by false pretenses and actual fraud. The court will address each assertion in turn.

A. False Pretenses

7

"False pretenses are 'a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor.'" Hosey v. Hosey (In re Hosey), 355 B.R. 311, 318 (Bankr. N.D. Ala. 2006) (quoting Sterna v. Paneras (In re Paneras), 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)). False pretenses is very broad and includes "'any intentional fraud or deceit practiced by whatever method in whatever manner.'" Id. (quoting FCC Nat'l Bank v. Gilmore (In re Gilmore), 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998). There is no evidence that Mrs. Woody intended to deceive or defraud Mr. Woody when she failed to record the correct amount of cash receipts generated by the restaurant. As discussed in detail above, Mr. Woody, at the very least, knew that Mrs. Woody was not recording all the cash receipts generated by the restaurant. In fact, he himself took money from the register knowing that it would not be reported. Under these facts, Mr. Woody was not deceived or defrauded, and Mrs. Woody did not obtain the unrecorded cash receipts or any receipts by false pretenses. Therefore, this court finds that Mr. Woody has not met the burden of proof that Mrs. Woody obtained the cash receipts by false pretenses and that Mr. Woody's objection to dischargeability on that basis pursuant to § 523(a)(2) is due to be overruled.

## B. Actual Fraud

"Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud." Sec. and Exch. Comm'n v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1282 (11th Cir. 1998). Therefore, in order to meet the burden of proof on his claim pursuant to 11 U.S.C. § 523(a)(2)(A), Mr. Woody must show by a preponderance of the evidence that: (1) Mrs. Woody made a false representation to deceive Mr. Woody; (2) Mr. Woody relied on the misrepresentation;

(3) the reliance was justified; and (4) Mr. Woody sustained loss as a result of the misrepresentation. Id. See also Taylor v. Wood (In re Wood), 245 Fed. App'x 916, 917-18 (11th Cir. 2007). The facts of this case do not support a finding that Mr. Woody relied upon any alleged representation by Mrs. Woody that she was properly accounting for all cash receipts generated by the restaurant. As discussed in detail above, Mr. Woody, at the very least, knew that Mrs. Woody was not recording all the cash receipts generated by the restaurant. In fact, he himself took money from the register knowing that it would not be reported. As such, this court finds that Mr. Woody knew that some cash receipts from the restaurant were not being accounted for, and that he could not have relied upon any representation to the contrary. Therefore, this court finds that Mr. Woody has not met his burden of proof and that Mr. Woody's objection to dischargeability pursuant to § 523(a)(2)(A) is due to be overruled.

II. Is the debt owed to Mr. Woody nondischargeable pursuant to 11 U.S.C. § 523(a)(4)?

Section 523 of the Bankruptcy Code is applicable to cases filed under Chapter 7 of the bankruptcy code. While this case was a Chapter 7 when the adversary proceeding was filed, the case was converted to a Chapter 13 shortly thereafter. Generally speaking, section 523 does not apply in a Chapter 13 case. However, § 1328(a)(2) makes § 523(a)(4) applicable to a Chapter 13. Therefore, this court will address whether the debt owed to Mr. Woody is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

Section 523(a)(4) provides, in pertinent part:

(a) A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt-
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

9

11 U.S.C. 523(a)(4).

Mr. Woody asserts that Mrs. Woody embezzled cash receipts from Woody B's restaurant.[9] To determine whether a debt is for embezzlement, the bankruptcy court looks to federal common law. Cunningham v. Cunningham (In re Cunningham), 482 B.R. 444, 447 (Bankr. N.D. Ala. 2012). Under federal common law, embezzlement is "'the fraudulent appropriation of property belonging to another by a debtor who was entrusted with the property or into whose hands the property has lawfully come.'" Id. at 448 (quoting HOC, Inc. v. McAllister (In re MsAllister), 211 B.R. 976, 988 (Bankr. N.D. Ala. 1997). In order to prove that Mrs. Woody embezzled the cash receipts, Mr. Woody must show by a preponderance of the evidence that: (1) The cash receipts that went unreported did not rightfully belong to Mrs. Woody; and (2) Mrs. Woody misappropriated the cash receipts with fraudulent intent. Id.

There is no evidence that Mrs. Woody acted with fraudulent intent as to Mr. Woody when she failed to record the correct amount of cash receipts generated by the restaurant. As discussed in detail above, Mr. Woody, at the very least, knew that Mrs. Woody was not recording all the cash receipts generated by the restaurant. In fact, he himself took money from the register knowing that it would not be reported. Therefore, this court finds that Mr. Woody has not met his burden of proof and Mr. Woody's objection to dischargeability pursuant to § 523(a)(4) is due to be overruled.

III. Is the debt owed to Mr. Woody nondischargeable pursuant to 11 U.S.C. § 523(a)(5)?

Section 523 of the Bankruptcy Code is applicable to cases filed under Chapter 7. While this case was a Chapter 7 when the adversary proceeding was filed, the case was converted to a Chapter

---

[9]Mr. Woody makes no allegation that Mrs. Woody committed a fraud or defalcation while acting in a fiduciary capacity or that Mrs. Woody committed larceny.

10

13 shortly thereafter. Generally speaking, section 523 does not apply in a Chapter 13 case. However, § 1328(a)(2) makes § 523(a)(5) applicable to a Chapter 13. Therefore, this court will address whether the debt owed to Mr. Woody is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

Section 523(a)(5) provides, in pertinent part that:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt-
        (5) for a domestic support obligation

11 U.S.C. § 523(a)(5). "Domestic support obligation" is a defined term under the Bankruptcy Code. It means

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is-
>   (A) owed to or recoverable by-
>     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>     (ii) a governmental unit;
>   (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A). At issue in this case is whether the $36,745.20 awarded to Mr. Woody "as his share of the profits derived from the marital business" in the Final Decree of Divorce is in the nature of alimony, maintenance, or support. (Exhibit 1). "A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or

alimony." Cummings v. Cummings, 244 F. 3d 1263, 1265 (11th Cir. 2001). In determining whether the parties intended a debt to be in the nature of support or alimony, courts should look to the following factors:

> (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes.

Benson v. Benson (In re Benson), 441 Fed. App'x 650, 651 (11th Cir. 2011). None of these factors support a finding that the parties intended for the $36,745.20 awarded to Mr. Woody "as his share of the profits derived from the marital business" in the Final Decree of Divorce to constitute alimony, maintenance, or support. Nowhere in the Final Decree of Divorce is alimony, maintenance, or support mentioned; Mr. Woody was in a better financial position than Mrs. Woody, so it is unlikely that he would be awarded alimony or support and the award of $36,745.20 was not an ongoing obligation as Mrs. Woody was required to pay it within 180 days from the date of the Final Decree of Divorce.

The $36,745.20 awarded to Mr. Woody is nothing more than a property settlement awarding Mr. Woody one-half of the profits from the parties' restaurant. Therefore, this court finds that Mr. Woody has not met the burden of proof that the $36,745.20 awarded him in the divorce decree is for alimony, maintenance or support, and that Mr. Woody's objection to dischargeability pursuant to § 523(a)(5) is due to be overruled.

VI. Is the debt owed to Mr. Woody nondischargeable pursuant to 11 U.S.C. § 523(a)(6)?

Section 523 of the Bankruptcy Code is applicable to cases filed under Chapter 7. While this case was a Chapter 7 when the adversary proceeding was filed, the case was converted to a Chapter

13 shortly thereafter. Generally speaking, section 523 does not apply in a Chapter 13 case. Unlike the previous subsections of 11 U.S.C.§ 523(a) addressed in this opinion, § 1328(a)(2) does not make § 523(a)(6) applicable to a Chapter 13. See 11 U.S.C. § 1328(a)(2). Instead, 11 U.S.C. § 1328(a)(4) provides:

> (a) Subject to subsection (d), . . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt-
> > (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

11 U.S.C. § 1328(a)(4). Therefore, this court will address whether the debt owed to Mr. Woody is nondischargeable pursuant to 11 U.S.C. § 1328(a)(4), rather than 11 U.S.C. § 523(a)(6). At issue in this case is whether the alleged misappropriation of cash receipts constitutes a "personal injury to an individual" pursuant to 11 U.S.C. § 1328(a)(4).

> Although "personal injury" is not defined, its meaning can be gleaned by a review of other Bankruptcy Code sections, as well as by the construction of personal injury in other federal statutes. First, a comparison of 11 U.S.C. § 523(a)(6) with § 1328(a)(4) reinforces that "personal injury" in § 1328(a)(4) was meant to exclude injuries to property. Section 523(a)(6) governs the exception from discharge of debts for willful and malicious injury in Chapter 7 cases. That section excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). Chapter 13 does not apply § 523(a)(6); instead, in Chapter 13, § 1328(a)(4) provides only for the exception from discharge of damages for "personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4) . . . . Thus, "personal injury" in § 1328(a)(4) should be defined in contradistinction to injury to property; the emphasis in § 1328(a)(4) is on injury to an individual.

Adams v. Adams (In re Adams), 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012). This case revolves around whether the $36,745.20 awarded to Mr. Woody "as his share of the profits derived from the marital business" in the Final Decree of Divorce is nondischargeable. The alleged injury suffered by Mr. Woody is due to an alleged misappropriation of cash receipts or any receipts generated by Woody

13

B's, the restaurant. This does not constitute a personal injury as contemplated by 11 U.S.C. § 1328(a)(4) as it is an injury to property, in this case profits from a restaurant. Because this case involves an injury to property, rather than an injury to an individual, 11 U.S.C. § 1328(a)(4) is not applicable. Id. See also Waag v. Permann (In re Waag), 418 B.R. 373, 377 (9th Cir. B.A. P 2009) (stating that 11 U.S.C. § 1328(a)(4) applies to "personal injuries or death and not to injuries to property"). Therefore, this court finds that Mr. Woody has not met his burden of proof and that Mr. Woody's objection to dischargeability pursuant to § 1328(a)(4) is due to be overruled.

## CONCLUSION

Mr. Woody failed to prove that Debtor obtained the unreported cash receipts or any receipts from Woody B's by false pretenses or actual fraud. Therefore, this court finds that Mr. Woody's objection to dischargeability pursuant to § 523(a)(2) is due to be overruled. Mr. Woody failed to prove that Debtor embezzled the unreported cash receipts or any receipts from Woody B's. Therefore, this court finds that Mr. Woody's objection to dischargeability pursuant to § 523(a)(4) is due to be overruled. Mr. Woody failed to prove that the $36,745.20 awarded him in the divorce decree is for alimony, maintenance or support. Therefore, Mr. Woody's objection to dischargeability pursuant to § 523(a)(5) is due to be overruled. Mr. Woody failed to prove that 11 U.S.C. § 1328(a)(4) is applicable in this case because the $36,745.20 awarded him in the divorce decree was a debt for injury to property. Therefore, Mr. Woody's objection to dischargeability pursuant to 11 U.S.C. § 1328(a)(4) is due to be overruled.

**DONE and ORDERED** this November 6, 2013.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge